**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CEDRIC CHARLES FIGGS** | § | |
| | § | |
| **V.** | § | **A-14-CA-132-LY** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of Criminal Justice-** | § | |
| **Correctional Institutions Division** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 16); and Petitioner's response thereto (Document 30). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 21st Judicial District Court of Washington County, Texas, in cause number 15,824. Petitioner was charged with eight counts of burglary of a habitation enhanced with

two prior felony convictions.  Prior to the onset of trial, the State elected to proceed on Count VI

only.  Petitioner entered a plea of not guilty to a jury.  The jury found Petitioner guilty as charged.

Petitioner pleaded true to the two enhancements.  The Court granted the State's request to present

a third enhancement paragraph to which Petitioner also pleaded true.  The following day, the jury

sentenced Petitioner to life in prison.

Petitioner's conviction was affirmed by the Fourteenth Court of Appeals of Texas.  Figgs v.

State, No. 14-11-00844-CR, 2013 WL 440564 (Tex. App. – Houston [14th Dist.], pet ref'd).  The

Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review on July 24,

2013.  Figgs v. State, PDR No. 0266-13 (Tex. Crim. App. 2013).  Petitioner also challenged his

conviction in a state application for habeas corpus relief.  The Court of Criminal Appeals denied the

application without written order on January 8, 2014.  Ex parte Figgs, No. 80,198-02 at cover.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeal's opinion and is repeated

below.

> Christopher Kaminski returned home at about 4:30 in the afternoon of May 21, 2009,
> to find that his back door had been kicked in. Upon entering the house, Kaminski
> determined that two rifles and a jewelry box were missing from the house. The
> Washington County Sheriff's Department began an investigation of the burglary. On
> June 19, 2009, appellant, already in custody, agreed to give a voluntary videotaped
> statement to the Sheriff's Department investigators. During that statement, appellant
> told the investigators the missing jewelry box was thrown off a bridge in the Gun and
> Rod Estates subdivision. As a result of appellant's statement, the jewelry box taken
> from the Kaminski residence was recovered in the location where appellant admitted
> it was thrown off the bridge.FN3
>
> > FN3. During appellant's trial, evidence was admitted that a stolen
> > shotgun, not a rifle, was also recovered by Sheriff's investigators as
> > a result of appellant's statement. The shotgun was stolen during one
> > of a series of burglaries that occurred in Washington and Burleson

2

Counties. It appears from the record that appellant was initially detained in May 2009 as a suspect in another matter, the theft of a vending machine.

Figgs v. State, No. 14-11-00844-CR, 2013 WL 440564 at, *1 (Tex. App. – Houston [14th Dist.], pet.

ref'd).

**C.     Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.      The probable cause affidavit for the search warrant was false and fabricated;
2.      His Miranda rights were violated;
3.      He was denied effective assistance of counsel when his trial attorneys failed to:

     a.      file a motion to suppress the illegal evidence and statement; and
     b.      investigate the case;

4.      The trial court erred when the court denied him counsel at a critical stage and allowed his attorneys to withdraw;

5.      He was denied effective assistance of appellate counsel when his appellate attorney failed to:

     a.      raise several grounds of constitutional error regarding ineffective assistance of counsel;
     b.      challenge the charge of the court regarding party liability; and
     c.      separate the federal and state constitutional claims; and

6.      There was insufficient evidence to support his conviction.

## DISCUSSION AND ANALYSIS

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.   See Harrington v. Richter, – U.S. –, 131 S. Ct. 770, 783-85 (2011).   The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id.  Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." Id. (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." Id.  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As <u>Harrington</u> noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. <u>Id.</u> at 785 (citing 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

<u>Id.</u> at 740-41 (quotation and citation omitted).  Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 741 (quotation and citation omitted).  The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e).  That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1).  But absent such  a showing, the federal court must give deference to the state court's fact findings. <u>Id.</u>

**B.      Claim Challenging Probable Cause Affidavit**

In his first ground for relief, Petitioner argues the probable cause affidavit for the search warrant was false and fabricated. Specifically, Petitioner argues the Burleson County Sheriff's investigator "asserted that specific stolen items would be found at [his] residential home" and the "[t]he specific stolen items were not found."

As explained by Respondent, a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. Stone v. Powell, 428 U.S. 465, 493-95 (1976); Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). This rule applies to all claims arising under the Fourth Amendment. See, e.g. Janecka, 301 F.3d at 320 (search and seizure); Jones v. Johnson, 171 F.3d 270, 277-78 (5th Cir. 1999) (arrest). A petitioner must plead and prove the state court proceeding was inadequate in order to obtain post-conviction relief in federal court. Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986). Petitioner had the opportunity to file a motion to suppress in the trial court but apparently failed to do so. Petitioner also raised his Fourth Amendment challenge in his state habeas application. The Texas Court of Criminal Appeals denied the application without written order.

It is apparent Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment issues in state court. Petitioner is therefore barred from seeking federal habeas relief on these grounds. See Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes"). Accordingly, Petitioner is not entitled to federal habeas corpus relief on this claim.

6

C.     **Miranda**

In his next ground for relief, Petitioner argues his Miranda right to remain silent was violated when the "[p]olice initiate[d] reinterrogation without counsel."

In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the Supreme Court held that in order to preserve the Fifth Amendment's privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retain counsel or have counsel appointed for him. Statements obtained during a custodial interrogation without the benefit of these warnings are generally inadmissible. Missouri v. Seibert, 542 U.S. 600, 608 (2004). An individual is "in custody" for purposes of Miranda "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir. 1988) (en banc).

In Petitioner's case, the record demonstrates Petitioner waived his right to remain silent on June 19, 2009, as evidenced by his signature on the Miranda warnings card. 11 RR State's Exhibit 28; see also 8 RR 29-32, 34-36. The videotaped interview about which Petitioner complains was recorded that same day. Id. at State's Exhibit 23; see also 8 RR 36. Petitioner has provided no evidence to the contrary. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that Petitioner's right to remain silent was violated.

**D.      Ineffective Assistance of Trial Counsel**

In his next ground for relief, Petitioner argues he was denied effective assistance of trial counsel.  Specifically, Petitioner argues counsel failed to file a motion to suppress illegal evidence and an illegal statement and failed to investigate and interview witnesses.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668  (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential.  Id. at 686-689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. (Citation omitted).  Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged.  Id. at 695-97.  Accordingly, in order to prevail on a claim of ineffective assistance of

counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687.

An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance.  Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994).  However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case.  See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993); United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989); Lockhart v. McCotter, 782 F.2d 1275, 1282-83 (5th Cir. 1986), cert. denied, 479 U.S. 1030 (1987).  Petitioner failed to offer any specific facts supporting his contention that his counsel failed to investigate his case or interview witnesses. In addition, Petitioner has not shown a reasonable probability that but for his attorneys' actions taken prior to Petitioner's waiver of counsel, the outcome of his trial would have been different.  Moreover, Plaintiff's claims of ineffective assistance of counsel are wholly conclusory.  The Fifth Circuit has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.  Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28

U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

## E.    Self Representation

In his next ground for relief, Petitioner argues he was denied "counsel at critical stage by withdrawing each counsels days before schedual [sic] trial dates." Although he did not articulate his claim clearly, Petitioner is referring to the trial court allowing Petitioner to represent himself at trial.

A criminal defendant has a constitutional right to self-representation at trial when he knowingly and intelligently waives the right to counsel.  Faretta v. California, 422 U.S. 806, 807, 835 (1975). The defendant's waiver of his right to counsel must be unequivocal, and it should not be inferred by the court in the absence of a clear and knowing election.  Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir.1 982) (en banc).  Before accepting a waiver of counsel, the court must consider and weigh:

> the defendant's age and education . . . and other background, experience, and conduct. . . . The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant . . . and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

McQueen v. Blackburn, 755 F.2d 1174, 1177 (5th Cir.1985).

On appeal Petitioner argued the trial court erred in allowing him to proceed pro se at trial. After a thorough analysis, the state appellate court concluded Petitioner voluntarily and competently waived his right to counsel.  Figgs v. State, No. 14-11-00844-CR, 2013 WL 440564 at, *1-8 (Tex. App. – Houston [14th Dist.], pet ref'd).  Specifically, the appellate court recited:

> On July 28, 2010, appellant was indicted on eight counts of burglary of a habitation. The trial court appointed Bruno Shimek as appellant's attorney. On February 10, 2011, the trial court conducted a pre-trial hearing. During that hearing, Shimek

10

informed the court that appellant "has asked that I be withdrawn or replaced as his counsel. He says he no longer trusts me, he says I'm racist." After the trial judge informed appellant that it was not going to appoint another lawyer to represent him, the following exchange occurred:

THE COURT: Do you want to represent yourself?

[APPELLANT]: If I a—provide me with a law library I'd be much glad to.

THE COURT: Do you know something about practicing law?

[APPELLANT]: Yes, sir, I do. I'm in federal civil suits and there's not that much difference in court proceedings.

\* \* \*

THE COURT: All right. How many court-appointed lawyers have you had?

[APPELLANT]: Two; this one and a previous one, Mr. Lee Van Richardson.

THE COURT: Well, you need to understand something. You can write all the letters you want to this Court or to the district attorney or to your lawyer, whoever it is. You can complain about them, you can call your lawyer a racist, you can call the prosecutor a racist, you can call this Court a racist, but you need to understand something. It is not going to inure to your benefit to try to create a conflict with every lawyer that you have. You need to have a good lawyer representing you. You have a good lawyer representing you. This lawyer probably has the best record—trial record in this judicial district defending people. You're not going to get any better lawyer than Mr. Shimek. The Court suggests that you cooperate with him so that he can defend you in this case. You obviously need to be defended in this—what is it, seven or eight-count indictment—eight-count indictment. But the Court's not going to run through a list of lawyers and appoint you lawyer after lawyer. You need to understand and appreciate that.

Do you understand that?

[APPELLANT]: Yes, sir. May I voice my opinion for—on an issue, sir? I've been locked up 21 months, going on 21 months. I've never had a bond reduction or any motions filed on my behalf or anything.

The evidence—I don't even know what all the evidence they have against me, a video tape confession or something I have supposed to gave [sic], I haven't even seen that, and I've been locked up 21 months, and here I am scheduled to go to trial on the 21st now of this month, so I'm in the blind.

MR. SHIMEK: Judge, I'd just ask if he wants me off this case I prefer not to be forced to defend him if he doesn't want me.

He's called me a racist. I don't appreciate that. I have not done anything, said anything that would indicate that, and I really don't want to—and he says he wants to represent himself, I'd ask that the Court let him do it.

[APPELLANT]: He's made it clear that he don't think he can win this case, Your Honor, but he haven't proved to me or showed me any evidence of the DA.

MR. SHIMEK: Judge, I told him repeatedly that the state does not give me copies of the police report. I have told him what is in the police report. I've given him a summary of the statements. I don't have access and I don't have copies of those reports and frankly don't have them in any other case. And he, for whatever reason, doesn't believe me, then I really don't want to represent him if that's the way he feels. And to be forced here to represent him when he's called me a racist, I just don't appreciate that and don't think I can do it.

[APPELLANT]: Your Honor, I proceed to trial with him only if I am able to object during the trial if anything that the DA has—

MR. SHIMEK: Maybe he wants to represent himself, Judge.

THE COURT: One moment.

[APPELLANT]: If the DA question the witness or something and my attorney don't object on it, I would like to object and point it out to my attorney as to why the objection needs to be made.

THE COURT: If you have a lawyer representing you at your trial you're not going to be able to make the objections during the trial. Your lawyer will be making those objections for you.

[APPELLANT]: Bring it to your attention, Your Honor, I have a constitutional right because it's my trial and anything that's not objected to I cannot come back and appeal. That's a Supreme Court ruling.

MR. SHIMEK: Judge, I'd let him represent himself. That's what he apparently clearly wants to do.

[APPELLANT]: I have—I will represent myself if I could have 30 days in the law library, the jail doesn't have a law library, the case law pertaining to my issues or charge, I represent myself. But I've been here 21 months, like I said, I'm entitled to see the DA file to know what I'm up against and how to prepare my trial—my case.

THE COURT: What law entitles you to see the DA's file?

[APPELLANT]: The Code of Criminal Procedure.

THE COURT: It does?

[APPELLANT]: Yes, sir.

THE COURT: Where?

[APPELLANT]: I don't have my file with me but I have it in my file. The U.S. Constitution also permits me to represent myself and gather all information that the DA has against me. I'm not standing here making—

THE COURT: So are you asking this Court to let you represent yourself?

* * *

[APPELLANT]: Yes, Your Honor.

THE COURT: You understand that—that the trial will be conducted consistent with the laws of this state.

13

[APPELLANT]: Yes, Your Honor.

THE COURT: Any opinions that have been handed down by the Court of Criminal Appeals or the courts of appeal in this state which apply.

Do you understand that?

[APPELLANT]: Yes, Your Honor.

THE COURT: Do you understand that this Court also must be guided by any decisions of the Supreme Court of the United States?

You understand that?

[APPELLANT]: Yes, sir.

THE COURT: You understand that the Court is going to apply the Texas Rules of Evidence and the Code of Criminal Procedure at this trial.

[APPELLANT]: Yes, sir.

THE COURT: Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: And are you telling this Court that you're prepared to educate yourself on all of these matters and to defend yourself?

[APPELLANT]: Yes, if given a law library with the short time of notice to prepare for trial. The law books I have is out—dated since 1971, and those are the jail's law library books that I have that I've been getting bits and pieces from to try to make sense of this. My indictment came 14 months after my incarceration. My attorney told me on the 3rd of this month that ya'll have ten years to indict me after my incarceration and that is not true.

* * *

THE COURT: How much time are you asking the Court to give you in order for you to prepare for trial Mr. Figgs?

14

[APPELLANT]: Thirty days and a law library, somewhere I can have adequate knowledge of the up-to-date law on the cases that has already been tried in my situation, in my criminal charge, sir, which there is no law library in the jail, in the Washington County jail, so here at the courthouse or some—if ya'll have an adequate law library where I can research case law pertaining to my charge.

THE COURT: All right. The Court's going to set this case for trial on April the 18th. The Court's going to grant both yours and Mr. Shimek's request to remove Mr. Shimek as your lawyer.

Another pretrial hearing occurred on April 7, 2011. During this hearing, the following exchange occurred:

THE COURT: The record will reflect the defendant is before the Court. The State is represented by its district attorney, Mr. Parham. The record will further reflect that Mr. Figgs is unrepresented by counsel, at his request.

* * *

THE COURT: Are you ready to proceed with trial on April the 18th?

[APPELLANT]: Yes, sir.

THE COURT: You still persist in your request to represent yourself?

[APPELLANT]: Yes, sir.

THE COURT: You do not want to request that this Court consider any request to appoint you an attorney?

[APPELLANT]: It would be—it would be in my best interest that the Court would, due to the fact that my—

THE COURT: That the Court appoint a lawyer to represent you?

[APPELLANT]: Yes, sir. And on that ground because I am not knowledgeable of the law as an attorney.

THE COURT: So you're now asking the Court to appoint you a lawyer?

15

[APPELLANT]: Well, not unless—you know, the prior two attorneys wouldn't do what I asked, which was file a motion to dismiss this case under Article 32.01 and 28.061 because the indictment is defective; it came back 14 months after my arrest.

There is nothing in the law books that done read or could find that, by me being—by my original arrest date and the case getting missed and I'm getting indicted under the original arrest—I was never released—that Article 32.01 and 28.061 does not apply to me. There is nothing in the case law and in the case book that says that.

THE COURT: Are you asking the Court now to appoint a lawyer to represent you, or are you persisting in representing yourself?

[APPELLANT]: I'm ready to go to trial, Your Honor.

THE COURT: That's not the question right now. The question is, do you persist in your position to represent yourself? In other words, do you want to keep representing yourself?

[APPELLANT]: Yes, sir.

THE COURT: So you are not making a request of this Court to appoint you a lawyer?

[APPELLANT]: No, sir.

THE COURT: And you are ready to go to trial on April the 18th?

[APPELLANT]: Yes, sir.

A third pre-trial hearing occurred on April 18, 2011. At the hearing, appellant appeared in court without counsel. After addressing several matters, the hearing once again turned to the issue of appellant representing himself:

[PROSECUTOR]: This is Article 1.051, right to representation. I believe it's paragraph (d), is it says that that paragraph needs to be executed by the defendant because he wishes to represent himself, if he so desires to sign it, if not then it's simply on the record that he refuses to sign.

It also talks, and I'm not sure if it's paragraph (e) or (f), that an attorney sitting in the courtroom just in case he needs to ask some

type of question would be available. It also references that that attorney does not need ten days at the Court's discretion to prepare for trial.

So if the Court wants to appoint someone to just sit here should Mr. Figgs have a question procedurally or whatever form or fashion, he would be available, or she.

[APPELLANT]: I object, Your Honor. Under the United States Constitution I do not need a sitting lawyer for me to answer my own questions to any witness or to the jury in voir dire.

[PROSECUTOR]: And I'd certainly concur with Mr. Figgs on that, Judge; however, Article 1.051, the attorney can sit over there in a chair perhaps where Ms. Mitchell is sitting, just simply be available.

THE COURT: Mr. Figgs, the Court has certainly reviewed these matters with you, but you do understand that you do have a right to have a lawyer to represent you and that you are—if you're indigent that the Court can appoint a lawyer to represent you? And you further understand that you're not required to accept a lawyer, that if you want to represent yourself then you are entitled to do so.

Are you still persisting in representing yourself?

[APPELLANT]: No, sir. If the Court appoint me a lawyer for trial that will be fine, but the lawyers I had in the past refused to do anything that I requested. And by law I am in control of my own trial and any suggestions I make they should take notice of it.

THE COURT: So are you requesting that the Court appoint a lawyer to represent you?

[APPELLANT]: Yes, Your Honor.

\* \* \*

THE COURT: The Court's going to grant your request and appoint a lawyer to represent you. . . .

\* \* \*

17

> THE COURT: All right. The Court's going to reset this matter on the trial docket of the Court to August the 1st and the Court will appoint a lawyer to represent Mr. Figgs. That lawyer will be getting in contact with you, Mr. Figgs.

Following the April 18, 2011 hearing, the trial court appointed Travis Fleetwood to represent appellant. Another pretrial hearing occurred on August 18, 2011. During that hearing, appellant rejected, on the record, a plea bargain offer from the State.

The final pretrial hearing occurred on September 1, 2011. The following occurred during that hearing:

> THE COURT: The record will reflect that Mr. Figgs is before the Court without counsel; however, the record will further reflect that Mr. Travis Fleetwood, his former counsel, is present and before the bench. The State is represented by its district attorney, Mr. Bill Parham.
>
> Mr. Figgs, you indicated on August the 30th, when you were before the Court a couple days ago, that you did in fact want to represent yourself.FN4
>
> > FN4. There is no reporter's record from the August 30, 2011 hearing in the appellate record.
>
> The Court has a waiver of counsel. I'm going to hand it to you at this time and ask you to look at it and sign it, so that that could be placed in the files or in the record of this case.
>
> * * *
>
> THE COURT: I know that, having gone over this with you before, when you indicated that you wanted to represent yourself, you're certainly making this decision of your own volition, is that correct?
>
> [APPELLANT]: Yes, Your Honor.
>
> THE COURT: I mean, no one is forcing you to sign this or to take the position that you want to represent yourself; is that right?
>
> [APPELLANT]: Well, I wouldn't say force. All the attorneys that I had in the past seems to refuse to do what I ask or suggest on my behalf, so I am in this position to—

18

THE COURT: No one is making you make the decision to represent yourself—

[APPELLANT]: No sir.

THE COURT:—are they?

[APPELLANT]: No, sir.

THE COURT: And you understand that you are obviously going to be at a disadvantage in representing yourself in the trial of this case, but you still persist in representing yourself; is that right?

[APPELLANT]: Yes, sir.

THE COURT: How old are you?

[APPELLANT]: I'm 49 years old.

THE COURT: And you can read and write, correct?

[APPELLANT]: Yes.

* * *

THE COURT: All right. The Court is going to accept your waiver and allow you to represent yourself.

On September 1, 2011, appellant executed a "Defendant's Waiver of Counsel" as required by article 1.051(g) of the Texas Code of Criminal Procedure. That waiver provides:

I have been advised this [first] day of [September], 2011, by the Judge of the 21st Judicial District Court of my right to representation of counsel in the case pending against me. I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge. Understanding my right to have counsel appointed for me free of charge if I am not financially able to employ counsel, I wish to waive that right and request the Court to proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel.

Appellant's case went to trial on September 6, 2011, with appellant defending himself. At the close of the evidence, the jury found appellant guilty. During the punishment phase of the trial, appellant entered pleas of "True" to each of the punishment enhancement paragraphs. At the conclusion of the punishment phase of appellant's trial, the jury assessed appellant's punishment at confinement for life in the Texas Department of Criminal Justice Correctional Institutions Division. This appeal followed.

On appeal, the state appellate court concluded Petitioner voluntarily waived his right to counsel. Specifically, the court determined:

> [T]he record establishes that appellant voluntarily exercised his constitutional right to represent himself despite the trial court's repeated warnings of the dangers of self-representation and consistent efforts to convince appellant that he should allow his court-appointed attorneys to handle his defense. Under those circumstances, the trial court had no choice but to allow appellant to represent himself during trial; to do otherwise would have violated appellant's independent constitutional right to conduct his own defense.

Id. at *7.  The court also concluded the trial court fulfilled its duty to verify that Petitioner was competent to waive his right to counsel and exercise his constitutional right to conduct his own defense.  Id. at *8. Petitioner also raised his issue in his state application for habeas corpus relief. As mentioned earlier, the Texas Court of Criminal Appeals denied the application without written order.  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he was denied "counsel at critical stage."

**F.     Ineffective Assistance of Appellate Counsel**

In his next ground for relief, Petitioner argues he received ineffective assistance of appellate counsel.  Specifically, Petitioner contends his appellate counsel should have raised several grounds

20

of constitutional error regarding ineffective assistance of counsel, challenged the charge of the court regarding party liability, and separated his federal and state constitutional claims.  Petitioner raised these claims in his state application for habeas corpus relief, which was rejected by the Texas Court of Criminal Appeals.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; Evitts v. Lucey, 469 U.S. 387, 393-95, (1985); Strickland, 466 U.S. at 688; Anders v. California, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by the familiar standard set forth in Strickland, 466 U.S. at 668. See also Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001) (applying the Strickland standard to ineffective assistance claims against appellate counsel).  As explained earlier, to establish ineffective assistance of counsel Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  Strickland, 466 U.S. at 688.  To show prejudice, a petitioner must show that, but for appellate counsel's performance, there is a reasonable probability he would have prevailed on appeal.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  Counsel is not deficient for failing to raise meritless issues on appeal.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of appellate counsel.

**G.      Insufficiency of the Evidence**

In his final ground for relief, Petitioner argues his conviction was based on insufficient evidence "due to the constitutional violations of the 4th; 5th; 6th ; 8th; 13th; and 14th Amendment." Respondent contends the claim is procedurally barred, because the claim was not raised on direct appeal.

Petitioner presented this same claim in his state application for habeas corpus relief. Although the Court of Criminal Appeals stated no reasons when it denied habeas relief, that court has long held that the sufficiency of the evidence may only be raised on direct appeal and may not be raised in a state habeas proceeding. West v. Johnson, 92 F.3d 1385, 1389 n. 18 (5th Cir.1996), cert. denied, 520 U.S. 1242 (1997); Ex parte McLain, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). Indeed, the Court of Criminal Appeals reaffirmed that where a state habeas applicant challenges the sufficiency of the evidence in a state habeas application and the court subsequently disposes of the application by entering a denial without written order, the applicant's sufficiency claim was denied because it was not cognizable.  Ex parte Grigsby, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). Thus, this procedural default in the state courts procedurally bars this Court from addressing the merits of Petitioner's sufficiency claim. Ylst v. Nunnemaker, 501 U.S. 797, 801-07 (1991).

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective

22

December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id.  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 8th day of September, 2014.


_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE